ENDORSED COPY

FILED

THIRD JUDICIAL DISTRICT COURT
COUNTY OF DOÑA ANA
STATE OF NEW MEXICO

JAIME BRAVO, JOE ESTRADA, ADAM
ORTIZ, EZEKIEL DIAZ and ELEE SILVA,
on behalf of themselves and a class of all
similarly situated individuals,

    Plaintiffs,

    v.

                                   CV 2007 - 2539

BOARD OF COUNTY COMMISSIONERS
FOR THE COUNTY OF DOÑA ANA,
in their official capacities, CHRISTOPHER
BARELA, in his individual and official capacities,
KEN MIYAGISHIMA, in his individual and
official capacities, and JOHN AND JANE
DOES 1-10, in their individual and official
capacities,

    Defendants.

## AMENDED COMPLAINT FOR CLASS ACTION INJUNCTIVE RELIEF AND FOR DAMAGES FOR NAMED PLAINTIFFS

COME NOW Plaintiffs, by and through undersigned counsel, and bring this Amended Complaint for violation of their civil rights, discrimination and negligence.

### PRELIMINARY STATEMENT

This is a class action brought by residents of the Doña Ana County Detention Center to redress the violations of their rights by Defendants. Plaintiffs' civil rights claims are brought under the New Mexico Constitution, Art. II §§ 13 and 18, and the Fourteenth Amendment of the United States Constitution, pursuant to 42 U.S.C. §§ 1983 and 1988. Plaintiffs' discrimination claims are brought under the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* and § 504 of the Rehabilitation Act, 29 U.S.C. § 794. Plaintiffs' tort

1



EXHIBIT

A

claims are brought under the New Mexico Tort Claims Act, NMSA 1978, §§ 41-4-6, 41-4-9 and 41-4-12 (2007).

Doña Ana County houses people with serious mental disabilities at the Doña Ana County Detention Center (hereinafter "DACDC"), ostensibly because there are insufficient mental health resources to provide community-based or residential mental health services to people in Doña Ana County. As a result, Defendants and their agents have chosen to arrest and incarcerate people with mental disabilities instead of providing them with the treatment they need. Once they have taken members of the plaintiff class into their custody, Defendants do not provide them with the screening, assessment, treatment planning, treatment and discharge planning required by law. Instead, they chronically engage in acts or omissions that are discriminatory and negligent, and which manifest deliberate indifference to Plaintiffs' serious mental health needs. Accordingly, Plaintiffs bring this action seeking preliminary and permanent injunctive relief on behalf of the plaintiff class to require Defendants to adopt and implement policies and practices to correct the violations of the law. The named Plaintiffs also seek damages for the violations of their rights.

JURISDICTION AND VENUE

1.  This Court has general jurisdiction in this matter. Further, jurisdiction is invoked pursuant to the Declaratory Judgment Act, NMSA 1978, §§ 44-6-1 to 44-6-15 (1975), the New Mexico Constitution, and New Mexico common law.

2.  Venue is proper in this district, pursuant to NMSA 1978, § 38-3-1 (1988), as all parties are residents of New Mexico and/or doing business within New Mexico, and all of the acts complained of occurred within New Mexico.

2

3. This Court has proper subject matter and personal jurisdiction over the parties.

4. The named Plaintiffs have exhausted all statutory pre-conditions to filing this suit.

5. This action seeks injunctive relief pursuant to NMRA, Rules 1-057 and 1-066.

### PARTIES

6. Plaintiff Jaime Bravo resides in Doña Ana County, New Mexico and is detained in DACDC.

7. Plaintiff Joe Estrada resides in Doña Ana County, New Mexico and is detained in DACDC.

8. Plaintiff Adam Ortiz resides in Doña Ana County, New Mexico and is detained in DACDC.

9. Plaintiff Ezekiel Diaz resides in Doña Ana County, New Mexico and was detained in DACDC until on or about October 24, 2007. Plaintiff Diaz had been previously detained in DACDC on approximately two other occasions.

10. Plaintiff Elee Silva resides in Doña Ana County, New Mexico and was detained in DACDC until on or about October 18, 2007. Plaintiff Silva had been previously detained in DACDC on approximately three other occasions.

11. Plaintiffs are "qualified individuals with a disability" as that term is defined at 42 U.S.C. § 12131(2).

12. Defendant Board of County Commissioners for the County of Doña Ana (hereinafter "Board") is the proper party subject to suit regarding claims against Doña Ana County. Defendant Board is a political subdivision of the State of New Mexico and a "person" under 42 U.S.C. § 1983. Defendant Board is a "public entity" as that term is defined in the Americans with Disabilities Act, 42 U.S.C. § 12131(1)(A), (B).

3

13. Defendant Christopher Barela is, and was at all pertinent times, Director of DACDC. As such, he is the legal custodian of all detainees at DACDC and is responsible for the safe, secure and humane housing of those detainees. Defendant Barela is and was responsible for any unsafe, dangerous, or defective conditions at DACDC, which is on property owned and operated by Defendant Board. At all times relevant hereto, Defendant Barela acted within the scope of his duties and employment, under color of state law. Defendant Barela is sued in his individual and official capacities.

14. Defendant Ken Miyagishima is the Mayor of the City of Las Cruces, and as such is the city official responsible for determining the policies and practices of police in the community, including whether to arrest people with mental disabilities. At all times relevant hereto, Defendant Miyagishima acted within the scope of his duties and employment, under color of state law. Defendant Miyagishima is sued in his individual and official capacities.

15. John Doe 1 is an agent of Defendant Board who establishes the Doña Ana County Sheriff's Department's criteria for arrest and transport to DACDC of individuals with mental disabilities who would not be arrested if they did not have a mental disability.

16. Jane Doe 1 is an agent of Defendant Board who establishes the Doña Ana County Sheriff's Department's criteria for arrest and transport to DACDC of individuals with mental disabilities who would not be arrested if they did not have a mental disability.

17. John Doe 2 is an agent of Defendant Miyagishima who establishes the Las Cruces Police Department's criteria for arrest and transport to DACDC of

4

individuals with mental disabilities who would not be arrested if they did not have a mental disability.

18. Jane Doe 2 is an agent of Defendant Miyagishima who establishes the Las Cruces Police Department's criteria for arrest and transport to DACDC of individuals with mental disabilities who would not be arrested if they did not have a mental disability.

19. John Doe 3 is an agent of Defendants Board and Barela who decides which individuals with mental disabilities will be admitted to DACDC, even though DACDC does not have available the mental health services these individuals require.

20. Jane Doe 3 is an agent of Defendants Board and Barela who decides which individuals with mental disabilities will be admitted to DACDC, even though DACDC does not have available the mental health services these individuals require.

21. Defendants JOHN AND JANE DOE 4-10 are employees and agents of the named Defendants who have violated the rights of Plaintiffs and the plaintiff class.

22. All John and Jane Doe Defendants are sued in their individual and official capacities.

## CLASS ACTION ALLEGATIONS

23. Pursuant to NMRA, Rule 1-023, Plaintiffs bring this action on behalf of themselves and the class of all people who are now, or in the future may be, detained in the Doña Ana County Detention Center who have any form of mental disability.

24. The plaintiff class is so numerous that joinder of all its members is impracticable.

5

There are approximately nine hundred people housed in the Doña Ana County Detention Center, which has a capacity for 846 beds. Defendants acknowledge that at least thirty to forty percent of the individuals detained in DACDC have a mental disability requiring some form of therapeutic service or support. Upon information and belief, there are other people with mental disabilities also housed in the jail.

25. The named Plaintiffs will fairly represent and adequately protect the interests of members of the class as a whole. The named Plaintiffs do not have interests antagonistic to those of other class members. All class members share an interest in assuring that all people with mental disabilities in the jail receive the services and supports to which they are entitled and that no person with a disability should be unnecessarily housed in the severely overcrowded jail. The named Plaintiffs and proposed class are represented by counsel who are experienced in class action and other civil rights litigation and can adequately represent the interests of the class.

26. A community of interest exists between the named Plaintiffs and other members of the class in that there are questions of law and fact that are common to all because:

    a. All members of the class are in the custody of the Doña Ana County; Detention Center and subject to the authority of Defendants;

    b. All members of the class are being denied adequate medical, psychiatric, psychological, educational and other therapeutic services and programs;

    c. It is in the interests of all residents of DACDC that residents with mental disabilities succeed in their efforts to vindicate the rights, privileges, and immunities that are secured by the New Mexico Constitution, Art. II §§ 13 and 18; Title II, Subtitle A of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-34; Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. §

6

794) and the Fourteenth Amendment to the United States Constitution; and

d. It is in the interest of the entire class if Plaintiffs can succeed in reducing the number of people with mental disabilities housed in the jail.

27. The questions of fact and law common to all class members predominate over any question affecting individual members of the class.

28. The claims of the named Plaintiffs are typical of the claims of the class. Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole.

## ALLEGATIONS PERTINENT TO ALL COUNTS

29. At all relevant times relevant, Defendants Board and Barela were the policymakers of DACDC.

30. DACDC houses approximately 800 to 900 detainees.

31. Although there is no formal system of tracking how many detainees in DACDC have mental illness, it is estimated that approximately thirty to forty percent of DACDC detainees have a mental illness.

32. In 2006, residents and former residents of the DACDC and their family members contacted lawyers and advocates regarding the inadequate mental health services provided by Defendants to individuals arrested in Doña Ana County.

33. Protection and Advocacy System (P&A) is a private non-profit New Mexico corporation, designated as New Mexico's Protection and Advocacy System, pursuant to the Protection and Advocacy for Individuals with Mental Disability Act, 42 U.S.C. § 10801, and is charged with the duty to protect and advocate for the rights of individuals with mental disabilities.

7

34. On December 11-13, 2006, jail conditions expert Henry A. Dlugacz, at the behest of P&A, conducted an inspection of DACDC, focusing on whether the mental health service delivery system was able to meet the mental health needs of DACDC residents. In a memorandum dated December 21, 2006, Mr. Dlugacz recommended changes at DACDC, including changes regarding inadequate mental health screening. This memorandum was provided to Defendant Barela.

35. Defendants Board and Barela took no action in response to Mr. Dlugacz's recommendations.

36. On June 5, 2007, P & A sent a letter to Defendant Barela and requested that specific problems regarding inadequate mental health care be corrected, but Defendant Barela has not complied with the requested changes.

37. Defendants Board and Barela, and all other Defendants who are their agents and/or employees performing duties related to the operation of DACDC (collectively "DACDC Defendants"), have failed to provide adequate mental healthcare at DACDC, including but not limited to: a) inadequate screening for mental health issues for all detainees upon admission including Plaintiffs; b) not having a system to properly screen individual detainees upon placement into maximum segregation; c) failing to have a system to properly monitor the mental health needs of detainees held in the maximum segregation unit, including Plaintiffs; d) failing to provide needed psychiatric assessment and treatment to all individuals in the DACDC, including Plaintiffs; e) failing to establish systems to provide necessary mental health care and psychiatric care to detainees, including Plaintiffs; f) failing to have a system to arrange for transfer to treatment facilities those jail residents whose

8

serious mental health needs cannot be addressed within the jail; g) failing to have a system to provide discharge planning when people needing mental health treatment are leaving the jail; and h) failing to have a system to arrange for continuing treatment when residents with serious medical needs leave the jail.

38. Defendant Board, and all other Defendants who are agents and/or employees of Defendant Board and/or who are responsible for determining and implementing the Doña Ana County Sheriff's Department policies and practices related to the arrest and transport of people with mental disabilities, have failed to make reasonable modifications to avoid discrimination against individuals with mental disabilities, which has resulted in the unnecessary segregation and incarceration of individuals with mental disabilities.

39. Defendant Miyagishima, and all other Defendants who are agents and/or employees of Defendant Miyagishima and/or who are responsible for determining and implementing the Las Cruces Police Department's policies and practices related to the arrest and transport of people with mental disabilities, have failed to make reasonable modifications to avoid discrimination against individuals with mental disabilities, which has resulted in the unnecessary segregation and incarceration of individuals with mental disabilities.

40. Jaime Bravo suffers from mental illness and is currently a detainee at DACDC.

41. Plaintiff Jaime Bravo attempted to hang himself, following his arrest on or about April 19, 2007.

42. Plaintiff Jaime Bravo's suicidality and need for mental health treatment was obvious at the time he was admitted to DACDC on or about April 19, 2007.

43. Shortly after he was admitted to DACDC, Plaintiff Jaime Bravo was placed in a

9

restraint chair and later secluded in a padded cell.

44. Plaintiff Jaime Bravo again attempted to hang himself in his cell at DACDC, on or about August 6, 2007.

45. Following Plaintiff Jaime Bravo's suicide attempt on or about August 6, 2007, a new intake form was completed. Mr. Bravo was secluded in a padded cell, without being screened for his mental health issues.

46. Plaintiff Jaime Bravo again attempted to hang himself in his cell at DACDC, on or about August 22, 2007.

47. Plaintiff Jaime Bravo was placed in a restraint chair, as a consequence for his suicide attempt at DACDC on or about August 22, 2007.

48. Plaintiff Jaime Bravo was placed in segregation, during approximately August or September 2007, without being screened for mental health issues.

49. Plaintiff Jaime Bravo, a Spanish speaker who is not fluent in English, was never informed by any DACDC employee of DACDC's grievance or medical request procedures.

50. Plaintiff Jaime Bravo's need for psychiatric assistance was repeatedly brought to the attention of Defendant Barela and other DACDC employees by Protection and Advocacy System during September and October of 2007, but he still did not receive the necessary mental health care.

51. Plaintiff Joe Estrada suffers from mental illness and is currently a detainee at DACDC.

52. Plaintiff Joe Estrada's need for mental health treatment was obvious at the time he was admitted to DACDC during July of 2007.

53. At the time of Plaintiff Joe Estrada's admission, DACDC was informed that he has a

10

history of mental illness.

54. Plaintiff Joe Estrada was placed in segregation for approximately three weeks on or about August of 2007, without being screened for mental health issues.

55. Plaintiff Joe Estrada, who suffered a head injury during a fight prior to being placed in segregation, repeatedly requested medical attention during his time in segregation, due to dizziness, headaches and hallucinations, but to no avail.

56. Plaintiff Joe Estrada verbally requested mental health services on numerous occasions, but to no avail.

57. Plaintiff Joe Estrada filled out medical request forms, asking that he be receive assistance for his mental health needs, on or about August 13, 2007 and September 7, 2007, but to no avail.

58. Due to a positive result on a previous tuberculosis test, Plaintiff Joe Estrada is supposed to receive a chest X-ray. He has repeatedly requested a chest X-Ray, to no avail.

59. Shortly after Protection and Advocacy System's visit to DACDC during September 2007, Plaintiff Joe Estrada was brought into the medical unit and confronted by medical staff for having spoken with P&A about not receiving mental health care. At this time, Mr. Estrada began to receive an unknown medication, which has not improved his symptoms of mental illness.

60. Further, he has not received his medications consistently. On at least one occasion, Plaintiff Estrada was told that they had run out of his medications and would need to order more.

61. Plaintiff Estrada has continued to file grievances, but to no avail.

62. Plaintiff Adam Ortiz suffers from mental illness and is currently a detainee at

11

DACDC.

63.  Plaintiff Ortiz came to DACDC from a juvenile detention center, where he was identified as having a mental illness and received prescription medication to treat his symptoms of mental illness.

64.  DACDC was aware of Plaintiff Ortiz's need for mental health treatment at the time he was admitted to DACDC during approximately September of 2007.

65.  When Plaintiff Ortiz was transferred to DACDC, he was told that DACDC could not furnish him with the medication that had been prescribed to treat his symptoms of mental illness.

66.  Plaintiff Ortiz was provided with a limited amount of his prescription medication by the juvenile detention center, but when this limited supply was exhausted, DACDC did not provide Plaintiff Ortiz with his prescribed medication.

67.  Instead, DACDC provided Plaintiff Ortiz with a different medication, which caused him to experience nausea and vomiting.

68.  When Plaintiff Ortiz refused the medication that made him ill, DACDC refused to provide him with his prescribed sleeping medication.

69.  Plaintiff Ortiz has continued to request the medication he had received at the juvenile detention center, which was prescribed to treat his symptoms of mental illness, but to no avail.

70.  Plaintiff Ortiz requested to see a doctor at DACDC, and was eventually allowed to do so, but this doctor stated that he could not help with any mental health issues or mental health medications.

71.  Plaintiff Ortiz is not receiving appropriate treatment for his mental illness.

72.  Plaintiff Ezekiel Diaz suffers from mental illness and was, until on or about October

12

24, 2007, a detainee at DACDC. Plaintiff Diaz had been previously detained at DACDC on approximately two other occasions.

73. Plaintiff Ezekiel Diaz's need for mental health treatment was obvious at the time he was admitted to DACDC during approximately May of 2006.

74. During approximately March or April of 2007, Plaintiff Ezekiel Diaz was placed on two psychiatric medications. He was told that the dosage of these medications might need to be increased if the initial dosage did not adequately control his symptoms of mental illness.

75. Plaintiff Ezekiel Diaz's psychiatric medications were discontinued by a medical technician for approximately two weeks on or about April or May of 2007, apparently to punish Mr. Diaz for allegedly "cheeking" his medications. The medications were later reinstated to Mr. Diaz as a result of his submitting a medical request form on or about May 10, 2007.

76. Several weeks later, after Plaintiff Ezekiel Diaz discovered that his medications did not adequately control his symptoms of mental illness, he began to request psychiatric assistance and a reassessment of his medications.

77. Plaintiff Ezekiel Diaz made numerous verbal requests for psychiatric assistance and a reassessment of his medications, but to no avail.

78. Ezekiel Diaz also filled out medical request forms, requesting psychiatric assistance and a reassessment of his medications, on or about July 22, 2007, August 6, 2007, August 26, 2007, and September 6, 2007.

79. Plaintiff Ezekiel Diaz also made a handwritten request for psychiatric services on or about September 7, 2007.

80. Although the medical request form submitted by Plaintiff Ezekiel Diaz on or about

13

August 26, 2007 indicates that he was placed on a waiting list for psychiatric services on August 20, 2007, Mr. Diaz still did not receive adequate psychiatric assistance.

81.  Plaintiff Elee Silva suffers from mental illness and was, until on or about October 18, 2007, a detainee at DACDC. Plaintiff Silva had been previously detained at DACDC on approximately three other occasions.

82.  Plaintiff Elee Silva's need for mental health treatment was obvious at the time he was admitted to DACDC during approximately April of 2007.

83.  Plaintiff Elee Silva reports that DACDC employees told him that he is "disturbed," and that this was the reason he was not in general population.

84.  Plaintiff Elee Silva was placed in segregation during approximately May of 2007, without being screened for mental health issues or receiving mental health treatment.

85.  Plaintiff Elee Silva received a psychiatric evaluation at Los Lunas during approximately August or September of 2007. During the course of his evaluation, he was informed that he needed mental health treatment.

86.  Plaintiff Elee Silva repeatedly requested mental health treatment at DACDC to address his mental health issues, but to no avail.

87.  The DACDC Defendants have acted with deliberate indifference to Plaintiffs' serious medical, health, and safety needs, and to the risk that Plaintiffs will suffer serious mental disability, injury, or death. The actions and inactions described herein are not reasonably related to legitimate penological objectives.

88.  The DACDC Defendants had and have a duty to exercise reasonable care for Plaintiffs' health and safety in the maintenance and operation of DACDC and

14

DACDC's medical unit.

89.  The DACDC Defendants failed to exercise such care.

90.  The DACDC Defendants' acts and omissions were and are in derogation of any known standard for the proper administration of a correctional or detention facility.

91.  The DACDC Defendants' acts and omissions constitute negligence, gross negligence, or recklessness toward Plaintiffs, including but not limited to the failure to: a) manage adequately all operations of DACDC; b) exercise adequate general supervisory authority over all DACDC employees; c) organize DACDC health and safety procedures adequately; and d) issue and enforce orders and instructions against conduct such as that complained of herein.

92.  The DACDC Defendants' discriminatory practices, constitutional violations, and negligence, gross negligence, or recklessness, proximately caused Plaintiffs damages and injuries, including pain and suffering, and severe psychological and emotional distress.

93.  The discriminatory practices and negligence of all Defendants proximately caused Plaintiffs damages and injuries, including pain and suffering, and an exacerbation of their symptoms of mental illness.

94.  The conditions described in this Complaint are substantially likely to persist unless enjoined by this Court.

95.  Plaintiffs have suffered irreparable harm, including violations of constitutional rights, emotional distress, psychological abuse, and other harms that entitle them to damages.

## COUNT I: VIOLATIONS OF PLAINTIFFS' CONSTITUTIONAL RIGHTS
## BY THE DACDC DEFENDANTS

96.  Paragraphs 1 through 94 are hereby reiterated and incorporated by reference.

97.  The New Mexico Constitution, Art. II § 13 and the Fourteenth Amendment of the United States Constitution prohibit cruel and unusual punishment against detainees, and encompass a constitutional duty to provide necessary health care. At all times relevant herein, Plaintiffs had a constitutional right to be free from cruel and unusual punishment.

98.  The DACDC Defendants were and are aware of the lack of mental health care provided at DACDC, and are responsible for the state of the mental health care at DACDC.

99.  The DACDC Defendants violated Plaintiffs' constitutional rights when they subjected them to cruel and unusual punishment by not providing adequate mental health care and screening at DACDC.

100.  By admitting Plaintiffs to DACDC without appropriate mental health screening and having done so in knowing violation of Plaintiffs' rights to be free from cruel and unusual punishment, the DACDC Defendants have violated the New Mexico Constitution, Art. II § 13 and the Fourteenth Amendment of the United States Constitution.

101.  By admitting Plaintiffs to DACDC without appropriate mental health screening, and having done so in knowing violation of Plaintiffs' protected due process rights, the DACDC Defendants have violated the New Mexico Constitution, Art. II § 18 and the Fourteenth Amendment to the United States Constitution.

102.  By transferring Plaintiffs to DACDC maximum segregation, without providing

16

appropriate mental health screening and having done so in knowing violation of Plaintiffs' rights to be free from cruel and unusual punishment, the DACDC Defendants have violated the New Mexico Constitution, Art. II § 13 and the Fourteenth Amendment to the United States Constitution.

103. By transferring Plaintiffs to DACDC maximum segregation, without providing appropriate mental health screening, and having done so in knowing violation of Plaintiffs' protected due process rights, the DACDC Defendants have violated the New Mexico Constitution, Art. II § 18 and the Fourteenth Amendment to the United States Constitution.

104. The DACDC Defendants' acts and omissions in not correcting the lack of adequate mental health care at DACDC were intentional, malicious, wanton, and in gross and reckless disregard of Plaintiffs' constitutional rights.

105. The DACDC Defendants knew of, disregarded and were deliberately indifferent to, the unreasonable risk to Plaintiffs' health and safety as a result of their acts and omissions.

106. As a proximate and foreseeable result of the DACDC Defendants' violations of their constitutional rights, Plaintiffs have suffered and continue to suffer injuries, including but not limited to pain and suffering, emotional distress, and an exacerbation of their symptoms of mental illness.

## COUNT II: VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT BY ALL DEFENDANTS

107. Paragraphs 1 through 105 are hereby reiterated and incorporated by reference.

108. The actions and inactions described herein impose undue and disproportionate hardships on individuals with mental illness. The actions and inactions of all Defendants violated Plaintiffs' rights under the ADA by:

17

a. failing to reasonably accommodate the needs of people with mental disabilities detained by Defendants and by discriminating against them on the basis of disability;

b. denying aid, benefits or services that are as effective as those provided to non-disabled persons;

c. failing to make reasonable modifications in policies and procedures when necessary to avoid discrimination against Plaintiffs on the basis of disability; and unnecessarily segregating and incarcerating people with mental disabilities.

109. Defendants' acts and omissions, as stated herein, constitute violations of the Americans with Disabilities Act.

110. As a proximate and foreseeable result of Defendants' discriminatory acts and omissions, Plaintiffs have suffered and continue to suffer injuries, including but not limited to pain and suffering, emotional distress, and an exacerbation of their symptoms of mental illness.

## COUNT III: VIOLATIONS OF THE REHABILITATION ACT BY ALL DEFENDANTS

111. Paragraphs 1 through 109 are hereby reiterated and incorporated by reference.

112. Because Doña Ana County and the City of Las Cruces receive federal financial assistance, Defendants are subject to the requirements of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

113. Section 504 prohibits recipients of federal financial assistance from discriminating against qualified individuals with handicaps.

114. Defendants' violations of the ADA, as set forth above, also violate Section 504 of the Rehabilitation Act, by imposing undue and disproportionate hardships on

18

individuals with mental illness. Defendants' actions and inactions violate Plaintiffs' rights under the Rehabilitation Act by:

a.  failing to reasonably accommodate the needs of people with mental disabilities detained by Defendants, and by discriminating against them on the basis of disability;

b.  denying aid, benefits or services that are as effective as those provided to non-disabled persons;

c.  failing to make reasonable modifications in policies and procedures when necessary to avoid discrimination against Plaintiffs on the basis of disability; and

d.  unnecessarily segregating and incarcerating people with mental disabilities.

115.  Defendants' acts and omissions, as stated herein, constitute violations of the Rehabilitation Act.

116.  As a proximate and foreseeable result of Defendants' discriminatory acts and omissions, Plaintiffs have suffered and continue to suffer injuries, including but not limited to pain and suffering, emotional distress, and an exacerbation of their symptoms of mental illness.

## COUNT IV: TORT CLAIMS AGAINST ALL DEFENDANTS

117.  Paragraphs 1 through 115 are hereby reiterated and incorporated by reference.

118.  Defendants are liable under the New Mexico Tort Claims Act, NMSA 1978, § 41-4-6, § 41-4-9 and § 41-4-12 (2007), for breaching their duties: a) to manage all operations of DACDC, including DACDC's medical unit; b) to exercise general supervisory authority over all DACDC employees; c) to organize DACDC health and safety procedures into the most efficient organizational units; d) to issue and

19

enforce orders and instructions to remedy inadequate mental health treatment; e) to engage in proper law enforcement activities; and f) to obtain appropriate assistance for persons with mental disabilities, rather than arresting and incarcerating them due to their disabilities.

119.   At all times described above, John Doe 1, Jane Doe 1, John Doe 2, Jane Doe 2, and other John and Jane Doe Defendants, acted as law enforcement officers within the scope of their duties, pursuant to NMSA 1978, § 41-4-12.

120.   Defendants Board of County Commissioners, Barela and Miyagishima exercise direct supervisory responsibility and/or control over the John Doe and Jane Doe Defendants, and are therefore responsible for their negligent acts under the doctrines of *respondeat superior* and vicarious liability.

121.   Defendant Board enjoys actual *de facto* control over Defendant Barela, John Doe1, Jane Doe 1, John Doe 3, Jane Doe 3, and other John and Jane Doe Defendants, and is therefore responsible for their acts under the doctrines of *respondeat superior* and vicarious liability.

122.   Defendant Migayishima enjoys actual *de facto* control over John Doe 2, Jane Doe 2, and other John and Jane Doe Defendants, and is therefore responsible for their acts under the doctrines of *respondeat superior* and vicarious liability.

123.   The named Plaintiffs have suffered and continue to suffer injuries as a foreseeable and proximate result of the Defendants' breach of these duties.

124.   Proper notice as required by the Tort Claims Act has been given to the supervisory Defendants County, City and Mayor.

20

## JURY DEMAND

125. Plaintiffs hereby demand a jury trial on all counts so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

1. Issue a judgment declaring that the actions of Defendants described herein are unlawful and violate Plaintiffs' rights under the Constitution and laws of the State of New Mexico and the United States of America;

2. Permanently enjoin Defendants, their subordinates, agents, employees and all others acting in concert with them, from subjecting Plaintiffs and other people with mental disabilities to the illegal actions and inactions set forth in this Complaint;

3. Require Defendants to establish policies and procedures that prohibit the unnecessary incarceration of people with mental disabilities, and which require Defendants to reasonably accommodate people with mental disabilities with respect to decisions regarding whether to arrest or incarcerate them;

4. Require the DACDC Defendants to implement an effective, initial and periodic mental and emotional health screening program for all detainees at DACDC, so as to ensure that detainees who have or who develop mental and/or emotional disorders receive appropriate medical and mental health treatment;

5. Permanently enjoin the DACDC Defendants, their subordinates, agents, employees and all others acting in concert with them, from placing in maximum segregation any detainee who has previously manifested a history

21

of mental or emotional disability;

6. Order Defendants to promptly draft a proposed plan for addressing the violations of law found by the Court, to then provide the draft plan to Plaintiffs' counsel and their expert consultant for review and comment, and to then meet with Plaintiffs' counsel and their expert consultant to finalize the plan.

7. Grant compensatory and punitive damages to each of the named Plaintiffs against Defendants sued in their individual capacities, in sums to be determined at trial;

8. Grant Plaintiffs their reasonable attorneys' fees, costs and expenses pursuant to 42 U.S.C. § 1988, the Americans with Disabilities Act and other applicable law; and

9. Grant such other relief as the Court considers just and proper.

Respectfully submitted,

PROTECTION & ADVOCACY SYSTEM

Nancy Koenigsberg
Rosemary L. Bauman
Tim Gardner
1720 Louisiana NE, Ste. 204
Albuquerque, NM 87110
(505) 256-3100
(505) 256-3184 (fax)

ACLU of NEW MEXICO

George Bach
Staff Attorney
P.O. Box 566 Albuquerque, NM 87103
(505) 243-0046
(505) 266-5916 (fax)

22

LILLEY LAW OFFICES

Michael W. Lilley
1014 South Main Street
Las Cruces, NM 88005-2919
(575) 524-7809
(575) 526-2642 (fax)

LAW OFFICES OF PETER CUBRA

Peter Cubra
Lisa Schatz-Vance
2001 Carlisle NE #E
Albuquerque, NM 87110
(505) 265-7690
(505) 256-7641 (fax)

*Attorneys for Plaintiffs*

23



**AMERICAN CIVIL LIBERTIES UNION of NEW MEXICO**

P.O. Box 566 Albuquerque, NM 87103-0566
Email: gbach@aclu-nm.org
Phone: 505-243-0046
Fax: 505-266-5916

| | | | |
|---|---|---|---|
| **To:** | THIRD JUDICIAL DISTRICT COURT CLERK | **From:** | George Bach, Staff Attorney |
| | CLERK OF THE COURT | | |
| **Fax:** | (575) 523-8290 | **Pages:** | 24 (including cover) |
| **Phone:** | | **Date:** | 12/4/07 |
| **Re:** | BRAVO v. BOARD, No. CV 2007 2539 | **CC:** | |

☐ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

● Comments:

# DEAR CLERK OF THE COURT:

## PLEASE FIND PLAINTIFFS' AMENDED COMPLAINT ENCLOSED FOR FILING.

## THANK YOU IN ADVANCE.

The information contained in this facsimile message is information protected by attorney-client and/or the attorney/work product privilege. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by facsimile. If the person actually receiving this facsimile or any other reader of the facsimile is not the named recipient or the employee or agent responsible to deliver it to the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and return the original message to us at the above address via U.S. Postal Service.