IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAIME BRAVO, *et al*.,

       Plaintiffs,

v.                                       CIV 08-0010 WJ/KBM

BOARD OF COUNTY COMMISSIONERS
FOR THE COUNTY OF DOÑA ANA, *et al*.,

       Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Prison Health Services's (PHS) Motion for Reconsideration, Motion for Protective Order, and Alternative Motion to Modify Subpoena. *See Docs. 186, 189*. Having reviewed the motions and exhibits submitted by the parties, and relevant authorities, the Court finds that the Motion for Reconsideration *(Doc. 186)* should be DENIED as MOOT and that the Motion for Protective Order and Alternative Motion to Modify Subpoena *(Doc. 189)* should be GRANTED IN PART AND DENIED IN PART. The Court finds that the documents PHS asserts are trade secrets and privileged under a self-critical analysis are discoverable. However, a protective order to guard against improper disclosure of protected trade secrets is appropriate. Therefore, the Motion for Protective Order and Alternative Motion to Modify Subpoena *(Doc. 189)* will be GRANTED IN PART AND DENIED IN PART.

## Background

PHS is under contract with Defendant Board of County Commissioners for the County of

Doña Ana, New Mexico to provide medical and mental health care for all inmates at Doña Ana

County Detention Center (DACDC).  PHS was unwilling to answer or respond to Plaintiffs'

discovery requests absent a court order.  Consequently, a Joint Motion to Compel Disclosure of

Documents from PHS was agreed to by Plaintiffs and Defendants and filed with the Court.  *See*

*Doc. 171.*  The Court subsequently entered an order granting the joint motion.  *See Doc. 173*.

In the pending motions, PHS first questions the validity of the Court's August 28, 2009

Order compelling disclosure of the documents sought by the Plaintiffs.  *See Docs. 186, 189*.

PHS argues that it is a non-party and was never given notice or served with a copy of the joint

motion to compel.  PHS further argues that it was never properly served with a subpoena

pursuant to Fed. R. Civ. P. 45.

In early September 2009, Defendants served PHS with the Court's order compelling

disclosure of the documents sought by the Plaintiffs.  *Doc. 194 at 1*.  On October 13, 2009,

Debbie Fye, Health Services Administrator for PHS, was served with a subpoena.  PHS now

acknowledges that it has been served with a subpoena.  *See Doc. 189*.  Plaintiffs maintain that

obtaining the order from the Court compelling the disclosure of documents from PHS was an

appropriate procedure because PHS is an agent of the Defendants and is providing services that

the Defendants are constitutionally required to provide.  And therefore, Plaintiffs contend, PHS

is not an isolated third-party improperly drawn into the lawsuit.  *Doc. 194 at 3*.

Generally, the proper procedure for obtaining jurisdiction over a non-party during the

discovery process is service of a subpoena pursuant to Fed. R. Civ. P. 45.  *Cuthbertson v. Excel*

*Indus., Inc.*, 179 F.R.D. 599, 602 (D. Kan. 1998).  When a motion is filed requesting production

of documents by a non-party, the non-party is entitled to be served with a copy of the motion so

that the non-party can file a proper response.  *Id.*  "The fact that the [parties] may have used the

wrong method does not destroy the main thrust of [their] attempt.  Nor does it relieve [the Court]

of the responsibility of dealing with the problem raised by that attempt."  *Hickman v. Taylor*, 329

U.S. 495, 505 (1947).  The parties have now gone through the formality of pursuing the right

procedural device, and PHS has had the opportunity to voice its concerns and be heard by the

Court.  To the extent PHS is concerned that Plaintiffs failed to alert its attorney to the motion and

order, everyone is now on notice, and all parties understand that further inquiries regarding PHS

should be directed to PHS's attorney of record.  Having pursued the proper procedure, the

motion to reconsider is moot.  The Court will now move on to the substance of the underlying

issue.

## The Self-Critical Analysis Privilege

In response to discovery requests, PHS first asserts that some of the requested

information is protected from disclosure pursuant to the self-critical analysis privilege.

Specifically, PHS maintains that its Patient Safety Committee provides internal self-evaluations

of medical records and medical care provided at DACDC and the Quality Improvement (QI)

reports are documents generated by PHS as part of its confidential peer review/self-evaluation

process.  In opposition to the production, PHS argues that allowing disclosure of the documents

would curtail the free and candid exchange of information.

"The self-critical analysis privilege 'has led a checkered existence in the federal courts.'"

*Mitchell v. Fishbein*, 227 F.R.D. 239, 251 (S.D.N.Y. 2005) (quoting *Wimer v. Sealand Serv.,*

*Inc.*, 1997 WL 375661, at 1 (S.D.N.Y. July 3, 1997)).  The question of whether the self-critical

analysis privilege should be recognized as a matter of federal law has not been settled by the

Supreme Court. *Mitchell*, 227 F.R.D. at 251.  In *University of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 189 (1990), the Supreme Court declined to recognize a privilege against the disclosure of peer review materials pertinent to charges of discrimination in tenure decisions.  Recognition of the self-critical analysis privilege varies among the circuits.

Courts recognizing the self-critical analysis privilege in certain circumstances have generally required the party asserting the privilege to demonstrate that: (1) the information results from a critical self-analysis performed by the party seeking protection; (2) the public has a strong interest in preserving the free flow of the type of information sought; and (3) the information is of the type whose flow would be curtailed if discovery were allowed.  *Dowling v. Am. Haw. Cruises, Inc.*, 971 F.2d 423, 425-26 (9th Cir. 1992) (citations omitted).  "To these requirements should be added the general proviso that no document will be accorded a privilege unless it was prepared with the expectation that it would be kept confidential, and has in fact been kept confidential."  *Id.* at 426 (citations omitted).

In *Weekoty v. United States*, 30 F. Supp. 2d 1343 (D.N.M. 1998), District Judge C. LeRoy Hansen recognized the self-critical analysis privilege for certain documents created as part of a medical peer review process.[1]  Mr. Weekoty died while in the care of a physician at the Zuni IHS Clinic.  *Id.* at 1344.  The hospital physician peer review materials at issue in Mr. Weekoty's case were prepared for morbidity and mortality conferences.  *Id.*  It is in this context that Judge Hansen held the self-critical analysis privilege would be recognized,  *id.* at 1347-1348, and the privilege recognized is a qualified, not absolute, privilege, *id.* at 1346.

---

[1] PHS incorrectly assumes that *Weekoty* is binding on this Court.  *Weekoty* is a District of New Mexico case, not a Tenth Circuit case, and thus, is not binding authority on this Court.

Indeed, the majority of federal courts recognizing a self-critical analysis privilege do so in limited contexts. For instance, the cases cited by both the *Weekoty* court and PHS, only apply the self-critical analysis privilege in the hospital setting, and not in jails, prisons, detention facilities, or the like. *See Id.* at 1345.

That distinction was emphasized by the Ninth Circuit in *Agster v. Maricopa County*, 422 F.3d 836 (9th Cir. 2005). Although not controlling, *Agster* is a highly persuasive opinion because it addresses the peer review privilege in the prison context. In *Agster*, the parents of a deceased prisoner brought an action against the County, and others, for the death of their son while he was in the custody of the County. *Id.* at 837. The parents sought discovery of the mortality review conducted by Correctional Health Services. *Id.* at 838. On appeal, the Court noted that although the State of Arizona recognizes the privilege in certain limited circumstances, no federal court in the Ninth Circuit had recognized the privilege even in the hospital setting. *Id.* at 839. The Court firmly rejected extension of such a privilege, if it exists, to a jail or detention facility. Of particular significance is the Court's reasoning:

> Whereas in the ordinary hospital it may be that the first object of all involved in patient care is the welfare of the patient, in the prison context the safety and efficiency of the prison may operate as goals affecting the care offered. In these circumstances, it is peculiarly important that the public have access to the assessment by peers of the care provided. Given the demands for public accountability, which seem likely to guarantee that such reviews take place whether they are privileged or not, we are not convinced by the County's argument that such reviews will cease unless kept confidential by a federal peer review privilege. Accordingly, we are unwilling to create the privilege in this case.

*Id.*

Moreover, PHS has not met its burden of demonstrating that the documents are kept

confidential and that the reports are not disclosed outside of PHS.  Minutes from meetings

between DACDC's Medical Audit Committee and the QI Committee, as well as deposition

testimony from individuals employed by PHS and the New Mexico Department of Health

(NMDOH), suggest otherwise.  The viewing of QI reports on overhead projectors in the presence

of PHS personnel, DACDC staff, and representatives from NMDOH indicates that these reports

and the information contained in them were not kept confidential.  *See Doc. 213-2* (Supplement

to Exhibit 4 of *Doc. 202*).  Simply put, even if the self-critical analysis privilege could be

recognized in the prison context which is doubtful, PHS clearly waived any such privilege by

failing to keep the QI information confidential.

## Trade Secrets and Protective Order

PHS seeks a protective order pursuant to Fed. R. Civ. P. 26(c)(1)(G) covering the

documents identified as 20 through 25 on PHS's privilege log.  Fed. R. Civ. P. 26(c)(1)(G) states

in pertinent part:

> The court may, for good cause, issue an order to protect a party or
> person from annoyance, embarrassment, oppression, or undue
> burden or expense, including . . . (G) requiring that a trade secret
> or other confidential research, development, or commercial
> information not be revealed or be revealed only in a specified way.

No absolute privilege exists for trade secrets.  *Centurion Indus., Inc. v. Warren Steurer*

*and Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981) (citations omitted).  "To resist discovery under

Rule 26(c)([1)(G)], a person must first establish that the information sought is a trade secret and

then demonstrate that its disclosure might be harmful."  *Id.*  Once this burden is met, the party

seeking discovery must then establish that the disclosure is relevant and necessary to the action.

*Id.*  It is up to the court to decide whether trade secrets are relevant and if the need outweighs the

harm.  *Id.*  If trade secrets are found to be relevant and necessary by the court, the need for a

protective order regarding their disclosure is also within the court's discretion.  *Id.* at 326; *see*

*also Wang v. Hsu*, 919 F.2d 130 (10th Cir. 1990).

PHS specifically requests that documents 20 through 25 on its privilege log be

completely barred from disclosure because the documents constitute confidential and proprietary

information concerning business operations.  Additionally, PHS states that the documents

contain pricing information that it relies on when bidding for and negotiating contracts.

Plaintiffs are not in the business of providing health services to prisons.  They are in fact,

recipients of the types of services provided by PHS.  Nor are they in any way competitors of

PHS.  This, PHS has not sufficiently shown that disclosure, along with a protective ordering

limiting the manner in which the documents are disclosed, would cause substantial harm.

Plaintiffs state that the information sought pertains to the medical and mental health care

provided to detainees at DACDC and is relevant and necessary to their case.  The Court agrees.

Without these documents, Plaintiffs would not be able to ascertain the means, methods and

practices by which mental health care is administered at DACDC.  In addition, Plaintiffs have

agreed to a protective order forbidding the release of the documents to any third party.

It is within the sound discretion of the Court to determine the need for and extent of a

protective order.  Balancing the need for the information and the possibility of harm that might

result from disclosure, the Court finds the need weighs heavily in favor of disclosure.  The Court

also finds that a carefully fashioned protective order to guard against improper disclosure of the

trade secrets is appropriate.  As such, the Court directs PHS, Plaintiffs and Defendants to fashion

a protective order to be presented for approval.  Upon approval by the Court, PHS must disclose

the documents to the parties according to the terms of the protective order.

Wherefore,

**IT IS HEREBY ORDERED AS FOLLOWS:**

1.      PHS's Motion for Reconsideration *(Doc. 186)* is **DENIED** as **MOOT**.

2.      PHS's Motion for Protective Order, and Alternative Motion to Modify Subpoena

*(Doc. 189)* is **GRANTED IN PART AND DENIED IN PART**.  To the extent

that PHS requests that the Court enter a protective order or modify the subpoena

to reflect that the documents at issue are privileged under a self-critical analysis,

the motion is denied.

**IT IS FURTHER ORDERED** that the parties fashion a Stipulated Protective Order

specifying the manner in which documents 20 through 25 on PHS's privilege log will be

disclosed and submit it to the Court for approval within one week of the entry of this Order.

_____
UNITED STATES MAGISTRATE JUDGE